FILED

06/09/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0615

DA 19-0615

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 149

CLAYTON A. GREENWOOD,

      Petitioner and Appellant,

  v.

MONTANA DEPARTMENT OF REVENUE,

      Respondent and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
                  In and For the County of Lewis and Clark, Cause No. DDV-2016-170
                  Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          James M. Ramlow, Ramlow & Rudbach, PLLP, Whitefish, Montana

      For Appellee:

          Anthony R. Zammit, Teresa G. Whitney, Special Assistant Attorneys
          General, Department of Revenue, Helena, Montana

                              Submitted on Briefs:  April 29, 2020

                                        Decided:  June 9, 2020

Filed:

                                   Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Petitioner Clayton A. Greenwood appeals the August 28, 2019 Order of the First Judicial District Court, Lewis and Clark County, affirming the Montana Tax Appeal Board's (MTAB) administrative decision regarding Greenwood's residency status and dismissing his petition for judicial review. We address the following issue on appeal:

*Did Greenwood sever his Montana residency during the years 2008 to 2012 for income tax purposes?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 In 1999, Greenwood, his wife Carol, and their three children moved from Texas to Kalispell, Montana, where they purchased a home. Greenwood lived with his family in Kalispell for the next five years, where he enrolled his children in school, acquired a Montana driver's license, registered to vote in Montana, obtained Montana hunting and fishing licenses, opened a bank account in Montana, and registered vehicles in Montana. Greenwood continued to manage his businesses located in Texas. Greenwood and his family relocated to Texas in 2004.

¶3 In March 2013, the Montana Department of Revenue (DOR) began auditing Greenwood's nonresident individual income tax returns from the years 2008 to 2012. The DOR requested Greenwood complete and submit a series of questionnaires to help determine his residency status during those years. On the questionnaires, Greenwood asserted he and his family had moved back to Texas in 2004 and claimed Texas as his new state of residency. Greenwood noted he had been employed in Texas since 1977, owned real property, purchased vehicles, maintained bank accounts, acquired health insurance,

2

obtained routine healthcare, and used an accountant in Texas during the 2008 to 2012 audit years. Greenwood indicated he was not registered to vote in Texas and believed he voted in Montana in 2008. Greenwood acknowledged that while his wife Carol obtained a Texas driver's license upon moving to the state in 2004, he had retained his Montana driver's license and renewed it in 2010. Greenwood explained this by stating that he never found changing his license to be "a pertinent issue." Greenwood admitted that, prior to the audit years, from 1999 to 2004, he and Carol owned real property in Kalispell, enrolled their children in Kalispell schools, and maintained a bank account there. Greenwood asserted he and his family visited his Kalispell home "2-3 times a year" for vacation purposes during the audit years and received mail at the home while there. Greenwood also indicated he registered vehicles in Montana, claimed Montana as his legal residence for automobile insurance purposes, and obtained resident hunting and fishing licenses in both Montana and Texas during the audit years.

¶4 After verifying Greenwood's responses, the Department acknowledged that Greenwood spent significant time in Texas for work and leisure during the 2008 to 2012 audit years, but that Greenwood continued to declare Montana residency during that time and only took steps to declare Texas residency after he was contacted by the DOR. The DOR determined Greenwood was a Montana resident from 2008 to 2012 and assessed Greenwood $515,321.02 of Montana resident income tax, interest, and penalties.

¶5 Greenwood appealed to the DOR's Office of Dispute Resolution (ODR). The parties submitted stipulated facts and exhibits establishing that Greenwood obtained

approximately twenty-one Montana resident hunting, fishing, and trapping licenses from 2004 until 2013; applied for and obtained a Montana concealed weapons permit in 2010; registered to vote in Montana and voted both in-person and by absentee ballot in general and special elections during 2006 to 2010; renewed his Montana driver's license in 2010 and did not surrender it until September 2013; and registered three vehicles in Montana from 2002 to 2012.

¶6 The ODR conducted a hearing at which Greenwood testified. Greenwood admitted that he acquired his Texas fishing license by reciting his Texas driver's license number that he had memorized, even though he had surrendered that license when he moved to Montana in 1999. Greenwood also testified that by registering his vehicles in Montana, he avoided paying sales tax to Texas. On April 22, 2015, the ODR issued its final agency decision affirming the DOR's residency determination.

¶7 Greenwood appealed to the MTAB. The parties stipulated to the same facts and exhibits as submitted to the ODR, and agreed that the MTAB could consider the ODR hearing transcript and decision. After a hearing, the MTAB determined that Greenwood established Montana residency in 1999 upon moving to the state from Texas and continued to be a Montana resident during the 2008 to 2012 audit years. The MTAB found that upon moving back to Texas in 2004, Carol took affirmative steps to sever her Montana ties and establish a new residency, but Greenwood did not. The MTAB concluded that while Greenwood "maintained certain aspects of his life in Texas after he moved his residence to Montana," he "avail[ed] himself of the benefits of Montana residency" through 2012

4

by "the physical acts of" voting in local elections, registering vehicles in Montana "to avoid paying Texas sales tax," maintained a Montana checking account used primarily to write local checks in Montana, and obtained hunting and fishing licenses "year in year out" at resident fees. The MTAB noted that Greenwood admitted at the hearing that he saved over $900 each year by obtaining Montana hunting and fishing licenses at resident rates. The MTAB found Greenwood's hearing testimony incredible, stating,

> Greenwood's ability to misrepresent himself when it favors him calls his credibility into question. By his own admission he was willing to misrepresent himself to save money on hunting licenses, which raises the question whether he is now misrepresenting himself as a Texas resident to save money on taxes that might be owing to Montana if he is required to file resident Montana income tax returns.

¶8 On February 29, 2016, Greenwood petitioned the District Court for review of the MTAB's decision. The District Court denied Greenwood's petition regarding the issue of Greenwood's residency. Greenwood appeals.

## STANDARDS OF REVIEW

¶9 "The role of a district court conducting judicial review of an administrative decision is limited to a review 'confined to the record' of the agency, and the court does not act as a trier of the facts." *Peretti v. Dep't of Revenue*, 2016 MT 105, ¶ 15, 383 Mont. 340, 372 P.3d 447 (citing § 2-4-704(1), MCA; *Mercer v. McGee*, 2008 MT 374, ¶ 22, 346 Mont. 484, 197 P.3d 961). The district court should review the administrative decision to determine whether the agency's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Peretti*, ¶ 15. A finding of fact is clearly erroneous if a review of the record shows the findings are not supported by substantial evidence, the

5

agency misapprehended the effect of the evidence, or we are left with the definite and firm conviction that a mistake has been committed. *Peretti*, ¶ 15 (citing *Robison v. Dep't of Revenue*, 2012 MT 145, ¶ 10, 365 Mont. 336, 281 P.3d 218). A district court may not substitute its judgment for that of the agency as to the weight of the factual evidence, nor may the court "engage in a 'wholesale substitution' of its opinion for the opinion of the agency . . . ." *Peretti*, ¶ 15 (citations omitted). *See also* § 2-4-704(2), MCA ("The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.").

¶10 These same standards apply to our review of the district court's decision on appeal. *Mercer*, ¶ 16.

## DISCUSSION

¶11 *Did Greenwood sever his Montana residency during the years 2008 to 2012 for income tax purposes?*

¶12 Under § 15-30-2112, MCA, "[i]f a resident obtains employment outside the state, income from the employment is taxable in Montana." *See also Pletcher v. Mont. Dep't of Revenue*, 280 Mont. 419, 423, 930 P.2d 656, 659 (1996) (construing § 15-30-132, MCA (1995), in conjunction with § 15-30-101(16), MCA (1995), subsequently renumbered in 2009 as § 15-30-2112 and -2101(28), MCA, respectively) ("[I]t is clear that the legislature meant to tax residents of this state who work outside the state but maintain a domicile or residence in the state of Montana."); § 15-30-2101(18)(a)(i), MCA (providing that "wages, salary, tips, and other compensation

6

for services performed . . . while a resident of the state" constitute "Montana source income.").

¶13   A person may be considered a "resident" for Montana individual income tax purposes in one of two ways, the first being that the person is "domiciled in the state of Montana . . . ." Section 15-30-2101(28), MCA.  "Domiciled" is defined by administrative regulation as "having a residence in the state of Montana as stated in [§] 1-1-215, MCA." Admin. R. M. 42.2.304(17) (2008).  *See also Pletcher*, 280 Mont. at 422-23, 930 P.2d at 658 (We defer to "[t]he agency's interpretation of a statute governing its operations . . . .").  A residence is "the place where a person remains when not called elsewhere for labor or other special or temporary purpose and to which the person returns in seasons of repose." Section 1-1-215(1), MCA.  A person may only have one residence. Section 1-1-215(2), MCA.  "A residence cannot be lost until another is gained" and, if changed, can only be done so "by the union of act and intent." Section 1-1-215(3), (7), MCA.

¶14   The second way a person may be individually taxed as a Montana resident is if the person "maintains a permanent place of abode within the state even though temporarily absent from the state and [] has not established a residence elsewhere." Section 15-30-2101(28), MCA.  "Permanent place of abode" is defined by administrative regulation as "a dwelling place habitually used by an individual as the individual's home, whether or not owned by the individual or a dwelling the individual may someday leave." Admin. R. M. 42.15.107(1) (2008).

¶15 "Whether an individual is a Montana resident for Montana income tax purposes is determined in light of all facts and circumstances." Admin. R. M. 42.15.109(1) (2008).

¶16 Greenwood acknowledges that he was a Montana resident from 1999 until September 2004, when he lived in Kalispell with his family. Greenwood argues on appeal that he abandoned his Montana residency when he returned to Texas in 2004 and was a "Texas resident who improperly claimed the benefits of residence in Montana" during the 2008 to 2012 audit years. Greenwood asserts that the District Court erred in affirming the MTAB's administrative decision which was based on his "improper and self-serving declarations of Montana residency rather than on the objective factors required by law." We disagree.

¶17 Greenwood had no union of act and intent to sever his residence from Montana as required by § 1-1-215(7), MCA. Greenwood repeatedly took specific actions to maintain the benefits and privileges of a Montana residency, despite his current self-serving assertions that he intended to establish a Texas residence.

¶18 Greenwood represented himself to be a Montana resident when he renewed his Montana driver's license in 2010. *See* § 61-5-103(1), MCA (requiring that "[a] person who has resided in Montana for more than 60 consecutive days is considered to be a resident for the purpose of being licensed to operate a motor vehicle and must be licensed under the laws of Montana before operating a motor vehicle."). Greenwood represented himself to be a Montana resident when he applied for and acquired resident hunting, fishing, and trapping licenses year after year during the 2008 to 2012 audit years—privileges which the

Montana Legislature has taken great pains to protect by enacting strict residency requirements, § 87-2-102, MCA (enumerating several requirements for "determining whether a person is a resident for the purpose of issuing resident hunting, fishing, and trapping licenses . . . ."); setting higher application fees for nonresident hunters, § 87-2-113, MCA; limiting the number of nonresident licenses issued each year, *see generally* § 87-2-104 and -506, MCA; and enacting criminal penalties for falsifying residency information, *see* § 87-2-106(1), MCA (an applicant for a hunting, fishing, or trapping license "shall state the applicant's . . . street address of permanent residence, mailing address, [and] qualifying length of time as a resident in the state of Montana . . . .  An applicant for a resident license shall present a valid Montana driver's license . . . or other identification specified by the department to substantiate the required information."); § 87-6-302(1), MCA ("A person may not . . . subscribe to or make any materially false statement on an application or license."); § 87-6-303(1), MCA ("A person who is not a resident may not . . . affirm to or make a false statement to obtain a resident license."); § 87-6-303(2), MCA (specifying penalties for falsifying residency information). Greenwood represented himself to be a Montana resident during the 2008 to 2012 audit years when he voted in Montana elections, *see* § 13-1-111(1), MCA ("A person may not vote at elections unless the person is . . . a resident of the state of Montana . . . ."), and when he applied for and obtained a Montana concealed weapons permit, *see* § 45-8-321(1), MCA (providing that an applicant of a permit to carry a concealed weapon "must be a United States citizen or permanent lawful resident . . . and [] holds a valid Montana driver's license

9

or other form of identification issued by the state . . . . An applicant must have been a resident of the state for at least 6 months.").

¶19 Greenwood held himself out as a Montana resident and enjoyed many of the benefits and privileges granted by the State of Montana during the 2008 to 2012 audit years. He now seeks to bear none of the cost. Greenwood asserts the District Court and the MTAB failed to consider his argument under § 1-1-215(1), MCA, that he intended to return to Texas to establish residency, but his argument fundamentally fails because he is asking us to reweigh the evidence presented to the MTAB contrary to § 2-4-704(2), MCA, which does not allow for us to substitute our judgment for that of the agency as to the weight of the evidence on questions of fact. The MTAB considered all of Greenwood's arguments and evidence and found his actions established a pattern of claiming a certain residency status only when it was favorable to him. The MTAB further determined that Greenwood's acts in declaring Montana residency to obtain certain benefits controlled over his incredible assertions of Texas residency. We defer to the MTAB's findings regarding the weight and credibility of the evidence. *See Benjamin v. Anderson*, 2005 MT 123, ¶ 37, 327 Mont. 173, 112 P.3d 1039 ("The findings of the [agency], especially as to witness credibility, are . . . entitled to great deference.").

**CONCLUSION**

¶20 When assessing a person's acts and declarations regarding residency, "'[m]ore weight or importance will be given to a person's acts than to his declarations, and when they are inconsistent, the acts will control. It is said in this connection that actions

10

speak louder than words, but that the words are to be heard for what they are worth.'" *Veseth v. Veseth*, 147 Mont. 169, 173, 410 P.2d 930, 932 (1966) (quoting 28 C.J.S. Domicile § 18, p. 45). Greenwood's actions during the years at issue speak volumes. The District Court did not err when it affirmed the MTAB's administrative decision that Greenwood did not sever his Montana residency for income tax purposes from 2008 to 2012. Affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

11